IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BILLY BLUNT,
and others similarly situated,

    Plaintiffs,

v.                                                          C.A. No.: 1:22-cv-1389

**COLLECTIVE ACTION**

DIALPAD, INC.,

    Defendant.
_____ /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BILLY BLUNT (hereinafter sometimes referred to as "Plaintiff"), and others similarly situated, by and through his undersigned counsel, hereby sues Defendant, DIALPAD, INC., (hereinafter sometimes referred to as "Defendant"), and in support thereof states as follows:

## THE PARTIES

1. Plaintiff is an individual residing in Travis County, Texas.

2. Defendant, DIALPAD, INC., is a corporation existing under the laws of the State of Delaware and maintains offices in Travis County, Texas.

3. Defendant, DIALPAD, INC., operates a business communications software company within Travis County, Texas, and is an employer as defined by 29 U.S.C. § 203(d). See https://www.dialpad.com/.

## FACTS

4. Defendant, DIALPAD, INC., and is an employer as defined by 29 U.S.C. § 203(d).

5. Plaintiff was employed by Defendant from January 4, 2021, until April 15, 2022, as a "Account Executive" at the regular rate of $75,000.00 per year, plus commissions, in Travis County, Texas.

## VENUE

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant, DIALPAD, INC., has offices located in Travis County, Texas.

## COUNT I
## VIOLATION OF THE OVERTIME PROVISIONS OF
## THE FAIR LABOR STANDARDS ACT

7. Plaintiff re-alleges and incorporates herein paragraphs 1-6, *supra*.

8. This claim is properly before this Court pursuant to 28 U.S.C. § 1331, since this claim arises under federal law, and by the private right of action conferred in 29 U.S.C. § 216(b).

9. This is a collective action by Plaintiff, and others similarly situated, against their employer for unpaid wages pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. Plaintiff seeks damages for unpaid overtime, liquidated damages, and a reasonable attorney's fee and costs.

10. Defendants, DIALPAD, INC., has employees subject to the provisions of 29 U.S.C. § 206 in the facility where Plaintiff was employed.

11. At all times material to this complaint, Defendant, DIALPAD, INC., employed two or more employees and had an annual dollar volume of sales or business done of at least $500,000.00.

12. At all times material to this complaint, Defendant, DIALPAD, INC., was an enterprise engaged in interstate commerce, operating a business engaged in commerce or in the production of goods for commerce as defined by § 3(r) and 3(s) of the Act, 29 U.S.C. §§ 203(r)-(s).

13. At all times material to this complaint, Defendant employed workers who handled goods, which during their existence, had been shipped to Texas in interstate commerce.

14. At all times material to this Complaint, Defendant, DIALPAD, INC., was the employer of the Plaintiff and others similarly situated, and, as a matter of economic reality, Plaintiff and others similarly situated were dependent upon Defendant for their employment.

15. During Plaintiff's employment, Defendant repeatedly and willfully violated Sections 7 and 15 of the Fair Labor Standards Act by failing to compensate Plaintiff and others similarly situated at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 in a workweek.

16. Those workers who were affected by the Defendant's pay practice described herein were classified in the following job titles: 1) Account Executives; and 2) Business Development Representatives a/k/a Sales Development Representatives. At the time of Plaintiff's termination, Defendant employed an estimated 90 workers in these positions.

17. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines this Class as follows:

> ALL CURRENT OR FORMER EMPLOYEES OF DIALPAD, INC., WHO WERE EMPLOYED AS ACCOUNT EXECUTIVES OR BUSINESS DEVELOPMENT RERESENTATIVES A/KA/ SALES DEVELOPMENT REPRESENTATIVES FROM DECEMBER 30, 2019 TO THE PRESENT AND WERE NOT COMPENSATED FOR ALL WORK IN EXCESS OF 40 HOURS IN ANY WORKWEEK AT A RATE NOT LESS THAN ONE AND ONE-HALF OF THEIR REGULAR RATE FOR ALL OVERTIME HOURS WORKED.

18. This action is properly brought as a collective action for the following reasons:

a. The putative Class is so numerous that joinder of all putative Class Members is impracticable.

b. Numerous questions of law and fact regarding the liability of DIALPAD, INC., are common to the Class and predominate over any individual issues which may exist.

c. The claims asserted by Plaintiff are typical of the claims of putative Class Members and the Class is readily ascertainable from DIALPAD, INC.'s own records. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

  d. Plaintiff will fairly and adequately protect the interests of putative Class Members. The interests of putative Class Members are coincident with, and not antagonistic to, those of Plaintiff. Furthermore, Plaintiff is represented by experienced collective action counsel.

  e. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for DIALPAD, INC.

  f. The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

  g. DIALPAD, INC., acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

19. For the foregoing reasons, Plaintiff shall seek an order from this Court authorizing Plaintiff to issue class notification of this action as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) for all unpaid overtime claims asserted by Plaintiff. Class notice of this opt-in collective is appropriate because Plaintiff's claims are nearly identical to those of other putative Class Members. Plaintiff and putative Class Members are similarly situated, have substantially similar or identical job requirements and pay provisions, and are subject to Defendant's common practice, policy or plan regarding employee wages and hours.

20. In addition to the named Plaintiff, numerous employees and former employees of Defendant are similarly situated to Plaintiff in that they have been denied overtime compensation while employed by Defendant.

21. Plaintiff is representative of these other employees and is acting on behalf of their interests as well as Plaintiff's own interests in bringing this action.

22. Defendant either knew about or showed reckless disregard for the matter of whether

its conduct was prohibited by the FLSA and failed to act diligently with regard to its obligations as employers under the FLSA.

23. Defendant failed to act reasonably to comply with the FLSA, and so Plaintiff, and all others similarly situated, are entitled to an award of liquidated damages in an equal amount as the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b).

24. The acts described in the above paragraphs violate the Fair Labor Standards Act, which prohibits the denial of overtime compensation for hours worked in excess of 40 per workweek.

25. As a result of Defendant's unlawful conduct, Plaintiff and all others similarly situated are entitled to actual and compensatory damages, including the amount of overtime which was not paid that should have been paid.

26. Plaintiff and all others similarly situated are entitled to an award of reasonable and necessary attorneys' fees, costs, expert fees, mediator fees and out-of-pocket expenses incurred by bringing this action pursuant to 29 U.S.C. § 216(b) and Rule 54(d) of the Federal Rules of Civil Procedure.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, BILLY BLUNT, and all others similarly situated, demand Judgment against Defendant, DIALPAD, INC., for the following:

   a. Determining that the action is properly maintained as or collective action, certifying Plaintiff as the class representative, and appointing Plaintiff's counsel as counsel for Class Members;

   b. Determine, based on all available evidence, whether and to whom the opt-in notice should be distributed;

   c. Awarding Plaintiff and Class Members declaratory and/or injunctive relief as permitted by law or equity;

   d. Awarding Plaintiff and Class Members their compensatory damages, service awards, attorneys' fees and litigation expenses as provided by law;

  e. Awarding Plaintiff and Class Members their pre-judgment, moratory interest as provided by law, should liquidated damages not be awarded;

  f. Awarding Plaintiff and Class Members liquidated damages and/or statutory penalties as provided by law;

  g. Awarding Plaintiff and Class Members such other and further relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT

27. Plaintiff re-alleges and incorporates herein paragraphs 1 through 6 above.

28. This is an action by Plaintiff, BILLY BLUNT, against Defendant, DIALPAD, INC., for breach of contract.

29. This claim is properly before this Court pursuant to 28 U.S. Code § 1367, as it are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

30. On or about January 4, 2021, Defendant, DIALPAD, INC.'s management offered to pay Plaintiff as an Account Executive at a rate of $75,000.00 per year plus commissions.

31. Plaintiff accepted Defendant's offer to work as an Account Executive at a rate of $75,000 plus commissions.

32. Defendant, DIALPAD, INC., breached the parties' agreement by failing to pay Plaintiff commissions he was owed.

33. On March 30, 2022, Plaintiff spoke with Mark Knopp, Chief Techonology Officer at Traffix Logistics. During the call, Mr. Knopp told Plaintiff that his company had an immediate need for a new contact center solution for more than 600 agents. Plaintiff and Mr. Knopp's discussed the complexity and urgency of the situation for over 45 minutes.

34. At the end of the call, Plaintiff messaged two DialPad sales engineers with

qualifying questions to continue scoping out the project. After speaking with the DialPad sales engineers, Plaintiff emailed Mr. Knopp on March 30, 2022 to confirm DialPad's capabilities of meeting Traffix's contact center needs. Plaintiff then documented the sales opportunity and creating the sale quote in SalesForce which is the company's customer relationship management tool. Plaintiff concluded his day by sending an email to his manager, Jon Roche, to progress the sale as Plaintiff was out on vacation until April 6, 2022.

35. On April 7, 2022, Plaintiff had a telephone conversation with Jon Roche. In that conversation, Mr. Roche stated that he, Mr. Roche, would "run the point" on the Traffix sale, but that Plaintiff would get to "book it" meaning that Plaintiff would get credit for the sale and ultimately receive a commission. Plaintiff was entitled to "book" the sale because at the time Traffix contacted DialPad to make its purchase, Traffix was an account assigned Plaintiff in his sales territory coupled with the fact that Plaintiff was the initial contact with Traffix on the transaction.

36. On April 14, 2022, at Traffix's request, Defendant sent Traffix a Service Order for Traffix to execute and close the sale. The gross amount of the sale was approximately $1,300,000 entitling Plaintiff to a commission of approximately $80,000. On that same day, Jon Roche calendared a meeting with Plaintiff for the next day.

37. On that next day (April 15, 2022), Jon Roche terminated Plaintiff's employment during the recorded video meeting. Defendant told Plaintiff that he would not receive any commission on the Traffix sale, despite Jon Roche's previous assurance that Plaintiff would "book" the sale.

38. Defendant purportedly terminated Plaintiff for poor performance. However, contrary to Defendant's own business practices, Plaintiff had not previously been placed on a

Performance Improvement Plan or other form of disciplinary action. Plaintiff had not been previously counseled that his performance was lacking.

39. Two business days after Defendant terminated Plaintiff's employment, Defendant received the Service Order executed by Traffix.

40. Plaintiff was the procuring cause of the sale to Traffix, earned a commission, and entitled to be paid a commission. Defendant has breached its employment agreement with Plaintiff by failing to pay Plaintiff the commission on the Traffix sale.

41. As a result of Defendant, DIALPAD, INC.'s breach of the Parties' contract, Plaintiff has been damaged.

42. Plaintiff is entitled to recover his reasonable attorney's fees incurred as a result of bringing this claim pursuant to § 38.001(2), (8) of the Texas Civil Practice and Remedies Code.

43. All conditions precedent to this contract have occurred, have been waived or have lapsed.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands Judgment against Defendant, DIALPAD, INC., for the following:

a. Awarding Plaintiff, BILLY BLUNT, his unpaid wages, compensatory damages, attorneys' fees and litigation expenses as provided by law;

b. Awarding Plaintiff, BILLY BLUNT, pre-judgment interest as provided by law;

c. Awarding Plaintiff, BILLY BLUNT, his reasonable attorney's fees incurred as a result of bringing this claim pursuant to § 38.001(2), (8) of the Texas Civil Practice and Remedies Code.

d. Awarding Plaintiff, BILLY BLUNT, such other and further relief as the Court deems just and proper.

## COUNT III
**PROMISSORY ESTOPPEL**

37. Plaintiff re-alleges and incorporates herein paragraphs 1 through 6 and 33-37, *supra*.

38. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

39. This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to Plaintiff's claims occurred substantially in Travis County, Texas.

40. Defendant promised Plaintiff that he would get to "book" the sale Traffix and receive a commission on the sale.

41. Based upon his substantial reliance Defendant's promise, Plaintiff continued to work for DealPad, not only on the sale to Traffix, but to other prospective customers in his territory.

42. To his financial detriment, Plaintiff did not receive the commission on the Traffix sale.

43. Defendant knew that Plaintiff relied on Defendant's promise that he would receive commission on the Traffix sale to continue to work for Defendant and work on the Traffix sale specifically.

44. As a result of Defendant's failure to pay Plaintiff a commission on the Traffix sale as promised, Plaintiff has suffered damages.

## JURY DEMAND

45. Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a. The Court assume jurisdiction of this cause;

b. The Court award Plaintiff damages as specified above,;

c. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

d. The Court award Plaintiffs pre- and post-judgment interest at the highest rates allowed.

e.  Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

## JURY TRIAL DEMAND

Plaintiff, BILLY BLUNT, and others similarly situated, demands a jury trial on all issues so triable.

Respectfully submitted, December 30, 2022.

**ROSS • SCALISE LAW GROUP**
1104 San Antonio Street
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile
Charles@rosslawpc.com

_____
**CHARLES L. SCALISE**
Texas Bar No. 24064621
**DANIEL B. ROSS**
Texas Bar No. 789810

**ATTORNEYS FOR PLAINTIFF**